John SCHULTZ et al.,
Plaintiffs-Appellants,

v.

OWENS–ILLINOIS, INC., and District No. 9, International Association of Machinists and Aerospace Workers, Defendants-Appellees.

No. 77–1078.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1977.

Decided Aug. 19, 1977.

Rehearing En Banc Denied Sept. 20, 1977.

Rehearing and Rehearing En Banc
Denied Sept. 20, 1977.

---

851

Frank E. Wallemann, St. Louis, Mo., for plaintiffs-appellants.

C. E. Heiligenstein, Belleville, Ill., Thomas M. Hanna, St. Louis, Mo., for defendants-appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and MARKEY, Chief Judge of U. S. Court of Customs and Patent Appeals.*

* The Honorable Howard Thomas Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

CUMMINGS, Circuit Judge.

Plaintiffs are 25 employees at the Godfrey, Illinois, machine manufacturing shop operated by defendant Owens-Illinois, Inc., an Ohio corporation. They are members of co-defendant union.[1] Plaintiffs filed this complaint under Section 301 of the Labor-Management Relations Act (29 U.S.C. § 185).

According to the complaint, the Union represents plaintiffs and other employees at the Godfrey plant. On December 16, 1974, Owens-Illinois and the Union entered into a collective bargaining agreement expiring on March 31, 1977. Plaintiffs charge that this agreement was entered into by defendants for the benefit of the employee union members, so that each plaintiff is "entitled to the benefit of said agreement and to enforce the provisions thereof" (Complaint ¶ 5).

Article 20 of the agreement provided:

### Apprentices

"**Section 1.** It is agreed that the terms and the conditions of the Apprenticeship standards for machinists as developed by the International Association of Machinists, and Aerospace Workers, District No. 9, *shall* remain in effect for the life of this contract. By agreement of the Union and the Company, the Apprenticeship Program in the Machine Manufacturing Shop has recognized and continues to recognize the practice of a restricted pool, that is, the selection of Apprentices from personnel within the Shop in conjunction with the District No. 9 Joint Apprenticeship Committee.

"**Section 2.** The normal ratio of apprentices *shall* be one (1) apprentice to every eight (8) Master Machinists in the department. Apprentices *shall* serve for a period of 8,000 hours in accordance with the Federal Apprenticeship Standard Agreement.

1. District No. 9, International Association of Machinists and Aerospace Workers.

"**Section 3. Apprentice Rates**

| Job No. | Percent of Job No. U–11 Master Machinists |
| --- | --- |
| U–63 Apprentice—8th Period | 94% |
| U–65 Apprentice—7th Period | 88% |
| U–67 Apprentice—6th Period | 83% |
| U–69 Apprentice—5th Period | 78% |
| U–71 Apprentice—4th Period | 73% |
| U–73 Apprentice—3rd Period | 68% |
| U–75 Apprentice—2nd Period | 63% |
| U–77 Apprentice—1st Period | 58% |

"Apprentice rates *shall* be increased effective the first day of a new period following each 1,000 hours of employment.

"**Section 4.** Normally apprentices *shall* not be used to instruct or train other apprentices. Instructing and training *shall* normally be done by Master Machinists or qualified operators." (Italic emphasis supplied; bold face emphasis in original).

Supposedly in breach of Article 20, no employee of defendant Company has been classified as an apprentice since May 22, 1975, nor allowed to enter the Apprentice Program well before then. This failure of defendant Company to place eligible employees into an apprenticeship program has allegedly deprived plaintiffs of an opportunity to increase their skills and training and improve their wages.

Plaintiff Schultz protested the absence of an apprentice program to his Union, and it filed a grievance on his behalf in April 1976. This grievance was processed pursuant to the grievance procedure of Section 1 of Article 21 of the contract and rejected by defendant Company. Defendant Union refused to submit the grievance to arbitration under Section 2 of that Article. According to plaintiffs, the defendants conspired to defeat plaintiff Schultz' grievance, for in 1971 they had secretly agreed to eliminate the apprenticeship program in breach of the Union's duty of fair representation under 29 U.S.C. § 141.

As a result of the Company's failure to carry out its Article 20 apprenticeship program and the Union's breach of its duty of fair representation, plaintiffs assertedly lost the earnings difference between their current rate of pay and the higher rate of pay that they would have earned as Master Machinists. Moreover, because of the maximum age limit for apprentices, some plaintiffs, including plaintiff John Schultz, were permanently deprived of the opportunity of becoming apprentices, thus depriving them of Master Machinists' wages for the remainder of their working lives.

Plaintiffs sought a declaratory judgment that defendant Company violated Apprenticeship Article 20 of the agreement and that the defendant Union breached its duty of fair representation of plaintiffs. They also sought compensatory damages of $500,000 and exemplary or punitive damages of $500,000, and an order compelling the Company to abide by Apprenticeship Article 20 of the collective bargaining agreement by reinstating the apprenticeship program.

On September 21, 1976, defendant Union filed a motion to dismiss, asserting that the collective bargaining agreement was governed by the "Standards of Apprenticeship"[2] which supposedly did not require defendant company to continue an apprentice program when it "did not have sufficient available work to continue said program or full employment with its present journeymen employees." The motion also stated that the grievance procedure in Article 21 of the collective bargaining agreement did not require the Union to arbitrate plaintiff Schultz' grievance because it was "totally without merit." The other ground of the motion to dismiss was that the complaint failed to state a cause of action under 29 U.S.C. § 414 *et seq.*, the sections of Labor-Management Relations Act plaintiffs mistakenly had relied on with regard to the Union's alleged failure of fair representation before their September 24, 1976, amendment charging a breach of 29 U.S.C. § 141 *et seq.* The Company also filed a motion to dismiss, asserting that the complaint failed to state a claim.

**2.** These standards were those incorporated by reference in Section 1 of Article 20 and are reproduced in the Supplemental Appendix to the Union's brief.

In December 1976, the district court handed down a memorandum order dismissing the complaint for failure to state a claim. The court held that plaintiffs could not maintain a suit under Section 301 of the Labor-Management Relations Act because "the question of the duty of the company to maintain an apprenticeship program under the collective bargaining agreement is not 'uniquely personal' to plaintiffs."

A month later, the district court handed down another memorandum order refusing to modify its previous order. Plaintiffs maintained that even if the rights sought to be enforced were not uniquely personal, a § 301 action will lie because of the allegation of the breach by the Union of its duty of fair representation. The court reiterated that "before an individual may bring an[y] action pursuant to § 301, the rights asserted must be personal and vested in him at the time of the suit," citing *Brown v. Sterling Aluminum Products Corp.,* 365 F.2d 651, 657 (8th Cir. 1966), certiorari denied, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105. We reverse.

■ Ever since *Smith v. Evening News Ass'n,* 371 U.S. 195, 198–200, 83 S.Ct. 267, 9 L.Ed.2d 246, it is clear that Section 301 permits suits by employees against their employer and union when they are seeking to vindicate uniquely personal rights granted them by the collective bargaining agreement. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231; *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.[3] Both defendants urge this Court to affirm on the ground that plaintiffs do not have any "uniquely personal" rights to be trained as apprentices, so that Section 301 of the Labor-Management Relations Act affords them no remedy. We disagree.

■ To determine whether the rights plaintiffs seek to vindicate are "uniquely personal" rather than rights possessed by the bargaining unit as a whole, it is necessary to refer to Article 20, *supra,* of the collective bargaining agreement that was in effect until March 31, 1977. All four sections of the Article are in mandatory terms. The key section here is Section 2 providing that the normal ratio of apprentices shall be one to every eight Master Machinists. Defendants seek comfort in the Standards of Apprenticeship referred to in Section 1 of Article 20. However, Article 18 of those Standards, entitled "Ratio of Apprentices to Journeymen", provides:

"Ratio of apprentices to journeymen shall be in conformity with present or subsequent bargaining agreements between the employer and District No. 9" (Sup. App. 40).

As seen, that mandatory ratio is one apprentice to eight Master Machinists.[4]

Defendants also contend that a September 30, 1974, "Summary of Changes Between Owens-Illinois Administrative Division Machine Manufacturing—Godfrey, Illinois and the International Association of Machinists and Aerospace Workers—District # 9" modified the apprenticeship program from a mandatory to a voluntary one. On the contrary, that Summary of Changes was referring to the changes that the December 16, 1974, collective bargaining agreement was making in the previous collective bargaining agreement, and Article 8 of the Summary, the only article of the Summary referring to apprentices, states that the provisions of the earlier collective bargaining agreement "Remain as written" (Sup.App. 49). The clause in the Summary

---

3. Although defendant Company relies on *Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12, there the Supreme Court pointed out that as part of the national labor policy Congress has assured that minority employee voices should be heard and that a union must represent the interests of minorities within the unit fairly and in good faith. 420 U.S. at 64, 95 S.Ct. 977.

4. Because of this mandatory provision in Article 18 together with Article 20 of the bargaining agreement, four fragmentary phrases that the Union has selected from Articles 3, 5, 7 and 18 of the Standards of Apprenticeship relating to the employer's prerogatives vis-à-vis any particular apprenticeship applicant are irrelevant and do not transform this apprenticeship program into a voluntary one.

upon which defendants rely states "The Company will provide training for present employees when it deems it necessary." But this clause only governs changes in job classifications reflected in the new Appendix "A" to the December 16, 1974, collective bargaining agreement (Sup.App. 22–23, 62) and in no way concerns Article 20. Nothing in the Standards of Apprenticeship or in the Summary relieves defendants from the compulsory apprenticeship program established by Article 20 of the collective bargaining agreement.

These plaintiffs are not seeking to represent the entire work force of 366 employees (Union Br. 2). According to their counsel at oral argument, plaintiffs are the 25 most senior employees on a list maintained by the company of employees who are qualified to become apprentices. Various preliminary tests must be met in order to be eligible for apprenticeship in the first instance and, of this initial eligibility group, further tests and classes conducted outside the plant are required in order to be placed on the list. Traditionally, the list-qualified employee with the highest seniority would take the next available spot in the apprenticeship program assuming this individual was below the absolute age limit for beginning apprentices. Plaintiffs are asserted to be the very large majority of the list-qualified employees.

Defendants rightly point out that none of these specifics were alleged in the complaint or appear anywhere in the record. However, in a hearing before Judge Ackerman, plaintiffs' counsel conclusorily claimed each named plaintiff would, with certainty, become an apprentice if the program was in effect. This hearing was not transcribed and an authorized summary pursuant to F.R.A.P. 10(c) was not entered because the district judge's recollection of the hearing was not precise enough to settle the dispute between the plaintiffs and the defendants concerning what was said therein. However, the district court did include the parties' differing versions of the hearing in the record on appeal. The defendants' version does not dispute the plaintiffs' statement concerning the certainty that the plaintiffs would be granted apprenticeships if anyone was granted one.

■ Overtime and discharge and other rights which have been deemed to be "uniquely personal" possess two unifying themes. *Smith v. Evening News Ass'n*, 371 U.S. 195, 199–200, 83 S.Ct. 267, 9 L.Ed.2d 246. First, the employment benefit is mandatory under the collective bargaining agreement if certain circumstances have occurred. Second, a factual predicate which is unique and personal to a particular employee establishes these necessary and sufficient circumstances. For example, in order to obtain overtime, a given employee must work a period longer than his normal shift, but perhaps a limit on the amount of overtime which can be worked in a given period is also set. Under this example, given mandatory overtime rights in the contract, a particular employee who works overtime still must show he meets the maximum hours criterion before he is actually entitled to overtime pay.

■ Applying these themes to the plaintiffs, we have demonstrated that the apprenticeship program was mandatory under the collective bargaining agreement which was in effect at the time the plaintiffs filed suit. Also, either under the plaintiffs' counsel's representations at oral argument or the versions of the hearing in the record, plaintiffs have alleged a factual predicate which establishes the necessary and sufficient circumstances precedent to the actual vesting of the employment entitlement. Therefore, it was entirely appropriate for them to sue their employer and the Union under Section 301. *National Labor Relations Board v. Local 485, International Union of Electrical, Radio and Machine Workers*, 454 F.2d 17, 21 (2d Cir. 1972); *Emmanuel v. Omaha Carpenters District Council*, 535 F.2d 420, 423 (8th Cir. 1976).

Defendants rely almost exclusively on *Brown v. Sterling Aluminum Products Corporation, supra.* However, the *Brown* court recognized that individuals may bring an action under Section 301 where, as here, they are seeking to enforce personal rights

vested in them at the time of the suit. As noted, these individuals are not seeking a right possessed by the bargaining unit as a whole [5] and are not seeking to compel any collective bargaining. Only untrained employees are seeking controlled training of a high quality in order to improve their earning power. This factor sharpens the uniquely personal nature of the rights being sought, for the union membership as a group and recognized journeymen as well would receive no benefits from apprenticeships Article 20. Only the beneficiaries of rights under Article 20 have brought this suit, so that defendants and the court below are mistaken in asserting that plaintiffs' claim related to an entire bargaining suit. Therefore, even the *Brown* court would accord them standing to sue. See 365 F.2d at 657. Because the Union will not enforce plaintiff's apprenticeship rights, a Section 301 suit is the appropriate remedy. *Emmanuel, supra,* 535 F.2d at 423.

■ Lastly, the Company relies on Article 1, the Management Rights Article [6] contained in the December 16, 1974, collective bargaining agreement, but it does not even refer to apprentice training. Additionally, that article excepts from Management Rights matters "expressly modified by the specific provisions of this agreement." Article 20, the Apprenticeship article, is such a modification. Section 2 of Article 20 creates an affirmative obligation to provide an apprenticeship program while controlling the numbers of apprentices per journeymen. Otherwise, it would be virtually meaningless.

Plainly plaintiffs are seeking to protect rights afforded them under the collective bargaining agreement in force when their complaint was filed. Therefore, there is no occasion for us to decide whether they have any rights under the succeeding collective bargaining agreement whereby the apprenticeship program has apparently been made discretionary with the Company.[7] Although the Company complains that if Article 20 is enforced, there will be an impact of excessive costs upon the Company (Br. 12), that situation was evidently overcome under the new collective bargaining agreement. Only the named plaintiffs have any vindicatable rights under the 1974 collective bargaining agreement since they are the only employees that filed suit on this contract while it was still in force.

■ As restated in *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 29 L.Ed.2d 473, the union members may sue under Section 301 of the Labor-Management Relations Act to enforce rights conferred on them by an employer's promises in the collective bargaining agreement, and the union is a proper additional defendant if, as here, plaintiffs allege that their union breached the duty of fair representation. *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. Paragraph 10 of the complaint is sufficient to state a claim against the Union because it alleges that the negotiations between defendants with respect to Schultz' grievance were spurious and carried on in bad faith because of the Union's prior informal agreement with the Company to eliminate

---

**5.** The Union contends that the complaint alleges "all employees" have been denied access to the apprenticeship program, so that the plaintiffs are not seeking to enforce any personal rights. However, a reading of the whole complaint discloses that only 25 employees, eligible as of the time of the complaint, are suing to enforce the apprenticeship program. Of the 366 employees, 207 are journeymen master mechanics and 159 are non-journeymen (Union Br. 2). Plaintiffs' counsel advised us at oral argument that his 25 clients represent the "bulk" of those qualified to be apprentices.

**6.** Article 1 provides:
"MANAGEMENT RIGHTS
"It is agreed that the Company is vested exclusively with the management of the business, including the hiring and direction of the working force; the right to establish, change or introduce new or improved methods, job duties and crew sizes, standards or facilities. *Except as expressly modified by the specific provisions of this Agreement,* and subject to the grievance and arbitration procedure provided herein, the Company has the right to promote, suspend, demote, discipline, or discharge for just cause; and the right to relieve employees from duty because of lack of work by plant seniority or for other legitimate reasons." (Sup.App. 3) (emphasis supplied)

**7.** This information was conveyed at oral argument but is not reflected in the record.

the apprenticeship program. If those allegations can be proved, it would have been futile for the other plaintiffs to file similar grievances. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.

In remanding this case to the district court, we are not foreclosing any legitimate defenses the defendants may have relative to whether which or any of the ostensibly eligible plaintiffs would actually have been granted apprenticeship status. Nor do we express any view respecting the remedy to be afforded any ultimately prevailing plaintiff. We do hold that Article 20 of the December 16, 1974, collective bargaining agreement establishes a mandatory apprenticeship program and that it was not made voluntary by the Standards of Apprenticeship or by the September 30, 1974, Summary of Changes. Since plaintiff Schultz' grievance was meritorious on its face, defendant Union may not excuse its failure to process the grievance to arbitration on the ground that it was without merit.

The orders of December 3, 1976, and January 3, 1977, are reversed, and the cause is remanded for further proceedings consistent herewith.