L. Mets **LERWILL**, Charles M. Perry, for themselves and on behalf of all employees of Inflight Motion Pictures, Inc., Plaintiffs-Appellees,

v.

**INFLIGHT MOTION PICTURES, INC.,**
Defendant-Appellant.

No. 75–2671.

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1978.

**510**

Lawrence W. Thorpe (argued), Thorpe & Loynd, San Francisco, Cal., for defendant-appellant.

David B. Mogilefsky (argued), Tahoe Vista, Cal., for plaintiffs-appellees.

Before WALLACE and KENNEDY, Circuit Judges, and GRAY,* District Judge.

KENNEDY, Circuit Judge:

Relying on section 301 of the Labor Management Relations Act, two technicians covered by a collective bargaining agreement brought this class action against their employer to recover overtime pay as provided in the agreement and required by the Fair Labor Standards Act. The trial court held that the class action was properly maintained and that the class was entitled to the overtime pay, plus interest. On appeal the employer challenges the right of the employees to bring the class action under section 301 and further contends that the Union and a majority of the affected employees waived the overtime pay provisions of the bargaining agreement. We affirm.

The employer, Inflight Services, Inc., provides film and projectors for motion pictures shown on commercial airlines. As a part of its service, Inflight employs technicians to put the projectors in place, thread the film, and service the other equipment used to show movies to passenger audiences.

During the relevant period, January 1, 1967 through December 31, 1969, the technicians who performed these services for Inflight were covered by a collective bargaining agreement between Inflight and the International Alliance of Theatrical Stage Employees and Moving Picture Operators of United States and Canada, AFL–CIO, and Local 306 of the International. (Both labor organizations are referred to here as the "Union.") The pertinent portion of this collective bargaining agreement provided for overtime on the following terms:

> The work week for full-time technicians shall be forty hours per week; eight consecutive hours per day in five consecutive days per week . . . . Overtime shall be paid in one hour segments, or for a fraction thereof, at the rate of time-and-one-half . . . .

All concede that for the period in question overtime wages were not paid by Inflight for hours worked by employees in excess of forty hours per week. However, notwithstanding the contract provisions and the terms of the Fair Labor Standards Act, Inflight argued that the Union and a number of employees purported to waive overtime pay in order to obtain a larger salary through an extended work week. It was alleged that if the employees had not agreed to waive the overtime pay, Inflight would have hired additional technicians to avoid paying overtime, and thus the technicians who were already employed would have lost the extra income.

The district court determined that the action was maintainable as a class action pursuant to rule 23(b)(3) of the Federal Rules of Civil Procedure. Notices were sent to class members, pursuant to Fed.R. Civ.P. 23(c), advising of the right to decline participation in the class or to retain counsel. After a trial without jury, the district court decided in favor of the employees and issued a well reasoned opinion which is reported at 379 F.Supp. 690 (N.D.Cal.1974). The matter was referred to a magistrate for a determination of the amount of unpaid overtime owing to each class member. Ultimately the magistrate's calculations were adopted by the district court and judgment was entered accordingly.

At the outset, Inflight challenges the right of the employees to sue under section 301 of the Labor Management Relations

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

Act.[1] The employer contends that any cause of action for union members as a class must be prosecuted by the Union and not its individual members.

Section 301 provides a statutory mechanism for vindicating contract rights under a collective bargaining agreement. Although there is authority that only a union, and not individual employees, may assert a claim under a collective bargaining agreement if the matter involves questions of labor policy that by their nature must be reserved to the Union, *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 657 (8th Cir. 1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967); *cf. Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975) (individual employees have no authority to picket employer over alleged discriminatory hiring practices absent union approval), it is well settled that rights which are personal rights of the employees may be enforced by them directly under section 301. *Hines v. Anchor Motor Freight, Inc*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n*, 371 U.S. 195, 198–200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Such uniquely personal rights include "wages, hours, *overtime pay*, and wrongful discharge." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 562, 96 S.Ct. at 1055 (emphasis added). Overtime pay was the personal right involved in this case, and it was proper for the employees to bring suit directly against the employer under section 301.[2]

Moreover, this is not a case in which employees were required to exhaust procedures contained in the collective bargaining agreement as a prerequisite to commencing suit under section 301. *Hines v. Anchor Motor Freight, Inc., supra; Vaca v. Sipes*, 386 U.S. 171, 183–88, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *cf. Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The collective bargaining agreement in question did not provide for specific grievance procedures, and therefore there was nothing to exhaust before recourse could be had to the courts. *See Smith v. Evening News Ass'n*, 371 U.S. at 196 n.1, 83 S.Ct. 267.

Furthermore, even if we were to assume that an employee class action is not appropriate where a union has the capacity and willingness to represent its members, the record here fully establishes that it would have been futile for the employees to seek union assistance. The Union was actively involved in attempting to waive the overtime provisions, and thus it had expressed a position contrary to the one asserted by these plaintiffs. Additionally, there is substantial evidence that various employees made oral and written complaints to the Union, and no action was taken. This fully satisfied any requirement that the employees seek assistance from the Union. *Seay v. McDonnell Douglas Corporation*, 427 F.2d 996, 1001–02 (9th Cir. 1970). We therefore hold there is no impediment to the section 301 suit by the employees.

Inflight challenges the trial court's determination that the action was properly maintainable as a class action, contending that the class was too indefinite, that named plaintiffs were not adequate representatives of the class interest, and that a class action was not a superior remedy. We

1. Section 301(a), 29 U.S.C. § 185(a), provides:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. We note that it is also permissible for a labor union to sue to recover wages claimed by its members pursuant to the terms of a collective bargaining agreement. 29 U.S.C. § 185(b); *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 699, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

think the trial court was correct in ruling that the class action could be maintained.[3]

The claim that the class was too indefinite is wholly without merit. The technician employees constituted a, distinct group of plaintiffs whose members could be identified with particularity.

■ With reference to the ability of the named plaintiffs to represent the interests of the class, two criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *National Association of Regional Medical Programs, Inc. v. Mathews*, 179 U.S.App. D.C. 154, 159, 551 F.2d 340, 345 (1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). No question is raised concerning the diligence of plaintiffs' representation; however, it is asserted by Inflight that the interests of the class and those of the named plaintiffs were antagonistic. Inflight claims, specifically, that the bulk of the class members favored a waiver of overtime provisions and would not support a suit to enforce the contract terms.

We agree with the district court that there was no conflict of interest. Even assuming that a large percentage of employees favored the alleged waiver,[4] the 1967–69 collective bargaining agreement had terminated before the instant action was filed in the district court. Therefore, the employees were no longer confronted with an alleged choice between overtime at regular rates or not working overtime at all. Instead, the choice that they had was to assert their claim for payments or to relinquish it, and in this instance we pre-sume that it was in the general class interest to assert these rights.

■ Moreover, each member of the class received a notice pursuant to rule 23(c)(2) informing them of the pendency of the class action and advising the individual of his right to be excluded from the class. Accordingly, any employee who considered it in his best interest to withdraw from the class had the opportunity to do so. While a right to withdraw from a class action is not always a complete answer to an alleged conflict among class members, *see Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1179 (9th Cir. 1977) (concurring opinion), in these circumstances that option fairly protected the interests of any dissident employees.

■ Inflight charges that the class action device was not shown to be a superior remedy as is required by rule 23(b)(3), noting specifically that the Fair Labor Standards Act itself provides a cause of action for any injured employee. *See* 29 U.S.C. §§ 207, 216. It is true that if suit were brought under the Fair Labor Standards Act, the injured employees, on these facts, would recover not merely lost wages but statutory penalties as well, *see* 29 U.S.C. § 216(b), a point which, for obvious reasons, Inflight has not argued with much enthusiasm. Nevertheless, there are sound reasons for the trial court's determination that this action was best maintained as a class suit. Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated. The trial court's determination concerning the superiority of class action procedure is an area in which that court has wide discretion, *Rutledge v. Electric Hose and Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975); *Kamm v. California City Development Co.*,

---

3. In the instant case, our sole concern is whether the requirements of rule 23 have been satisfied. We have no occasion to question the general ability to bring a class action under § 301, as numerous cases have established that such a procedure is proper. *See, e. g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996 (9th Cir. 1970).

4. We note that there is a substantial question whether employees can be deemed to oppose rights which are not only the product of a collective bargaining agreement but also are mandated by statute.

509 F.2d 205, 210 (9th Cir. 1975), and it was well within the trial court's discretion to find that a class action was a superior method of adjudication in this case.

Inflight next contends that, assuming as a general matter that the employees may sue the employer directly under section 301 and that the suit can be brought as a class action, nevertheless plaintiffs were precluded from bringing a section 301 suit where an action lay under the Fair Labor Standards Act.

■■■■ It is clear that section 301 establishes a claim for relief from violations of collective bargaining agreements. The cause of action derives from the contractual provisions of the collective bargaining agreement and exists as a mechanism for vindication of those contract rights. This suit was based on a violation of an express covenant in the collective bargaining agreement providing for overtime pay, and that claim exists independently from any cause of action provided by the Fair Labor Standards Act.[5] It is true that in the circumstances of this case the plaintiff must elect which of two causes of action to assert, and when the choice is made the alternative action may be foreclosed. *Leone v. Mobil Oil Corp.*, 173 U.S.App.D.C. 204, 208, 523 F.2d 1153, 1157 (1975); *cf. U. S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357–58, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (holding that the plaintiff had the option of suing under section 301 or under the specific statutory provision, 46 U.S.C. § 596). Here the choice was made to sue under section 301, and that choice was a proper election.

■■■■ The only remaining defense by Inflight is that the Union and a substantial number of employees waived the contract provisions pertaining to overtime wages. This contention must be rejected. Assuming that officials of the Union and some of its members could waive or modify the written terms of the collective bargaining agreement by their conduct, a proposition upon which we expressly decline to rule, the agreement cannot be altered in a manner which would violate public policy as expressed by the Fair Labor Standards Act. *See Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949. *See also* 29 C.F.R. § 785.8 (1977). As the Court stated in *Tennessee Coal*, by the enactment of the Fair Labor Standards Act

> Congress intended . . . to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, *cannot be utilized to deprive employees of their statutory rights.*

*Id.* at 602–03, 64 S.Ct. at 705 (emphasis added).[6] In the instant case the Fair Labor Standards Act required Inflight to pay employees overtime wages for work in excess of forty hours a week. This statutory duty could not be modified or waived and any attempt to relieve Inflight from that obli- ·

---

**5.** In relevant part, 29 U.S.C. § 207 provides:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**6.** Moreover, in *Tennessee Coal*, the Supreme Court noted:

Congress was not unaware of the effect that collective bargaining contracts might have on overtime pay. It expressly decided to give effect to two kinds of collective agreements, as specified in § 7(b)(1) and (2) of the Act. Cf. § 8(c). It thus did not intend that other collective agreements should relieve employers from paying for overtime in excess of an actual workweek of 40 hours, regardless of the provisions of such contracts.

321 U.S. at 602, n.18, 64 S.Ct. at 705. Thus, the Court ruled that the Fair Labor Standards Act's overtime provisions could not be modified except by two specific types of arrangements (*see* 29 U.S.C. § 207(b)(1) and (2)), neither of which is applicable here. Accordingly, any attempted modification or waiver in the instant case was without effect.

514

gation was without effect. *Id.; United States v. Barnette*, 546 F.2d 187, 189 (5th Cir. 1977); *Robertson v. Alaska Juneau Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946), *cert. denied*, 331 U.S. 823, 67 S.Ct. 1314, 91 L.Ed. 1839 (1947).[7]

The decision of the district court is AFFIRMED.

---

**7.** In so holding, we do not suggest that the substantive rights created by the Fair Labor Standards Act must automatically be read into a contract which is otherwise silent on the subject of overtime wages, thus obviating the procedural limitations of the Act.