CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Howard McDougall, Trustee, Plaintiffs–Appellants,

v.

PYA/MONARCH OF TEXAS, INC., PYA/Monarch, Inc. and Sysco Food Services of Austin, Inc., Defendants–Appellees.

No. 87–1808.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1988.

Roger Albright, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for plaintiffs-appellants.

Christopher A. Knepp, McGinnis, Lockridge & Kilgore, Austin, Tex., for: Pya/Monarch.

Neil Martin, Fulbright & Jaworski, Houston, Tex., for Sysco Food Services.

Before WISDOM, GEE, and JONES, Circuit Judges:

EDITH H. JONES, Circuit Judge:

The district court granted summary judgment to appellees, PYA/Monarch of Texas and Sysco Food Services of Austin, absolving them of responsibility to contribute to the pension fund on behalf of workers in Teamsters Local Union 657 during the 6–month period after PYA/Monarch sold its Austin operation to Sysco and before Sysco agreed to contribute. The pension fund appeals. Finding no error of law by the district court and having no factual disputes before us, we affirm the summary judgment. Fed.R.Civ.Proc. 56(c).

## BACKGROUND

PYA/Monarch was party to a collective bargaining agreement (CBA) with the Teamsters local pursuant to which PYA/Monarch agreed to contribute to the Central States Pension Fund from August 8, 1983 to March 1, 1986 on behalf of its drivers and warehousemen. Section 1.3 of the CBA provides:

This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the

event of a sale of the operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of the agreement for the life thereof....

In addition, PYA/Monarch completed a participation agreement (PA) with Central States governing its obligation to contribute to the pension fund. The PA requires "employers" to make contributions. An "employer" is defined as any employer who is bound by a CBA and who agrees to be bound by the pension fund trust agreement. The PA provides that it retains effect until the employer notifies the fund by certified mail:

> The Employer expressly agrees and hereby acknowledges by the signing of the Agreement that its obligation to make contributions to the fund(s) shall continue until the above-mentioned written notice is received by the Funds and the trustees acknowledge the Employer as terminating in writing.

PYA/Monarch notified Central States on April 8, 1986 that its responsibility for contributions had terminated when Sysco purchased PYA/Monarch's Austin facility on September 28, 1985. Central States has yet to acknowledge the notice. PYA/Monarch ceased contributing to the pension plan at the date of sale.

Sysco, advised by PYA/Monarch about the CBA prior to its purchase, expressly refused to assume any of the CBA's obligations. Sysco has since hired a majority of the workers previously employed by PYA/Monarch. Sysco is currently negotiating or has completed a CBA with Local 657. In connection with its negotiations, Sysco has agreed to contribute to the Central States Pension Fund during these negotiations, including retroactive payments for the period from March 2, 1986.

Local 657, in a separate action, sought to require PYA/Monarch to obtain Sysco's as-sumption of the CBA but was denied relief by an arbitrator. The local union is not a party to this action filed by the pension fund pursuant to ERISA, 29 U.S.C. § 1001 et seq. and the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1145.

## DISCUSSION

### A. *PYA/Monarch.*

■ Central States argues that PYA/Monarch was obligated by the CBA to obtain the agreement of its successor to be bound by the CBA. The fund consequently contends that PYA/Monarch's sale of its assets to Sysco without securing Sysco's agreement to be bound by the CBA constitutes a breach of that obligation. The district court found that no such obligation was created by the CBA, and we agree.[1]

Section 1.3 of the CBA, quoted above, contains general successorship language, but it neither prohibits the employer from engaging in a transaction that would evade the terms of the CBA, nor does it require the employer to compel assumption of the CBA by the purchaser, nor does it provide that PYA/Monarch guarantee wages and benefits until the CBA expires. Such specific language has been held necessary to impose the duties on an employer urged by Central States, as the arbitrator found after reviewing numerous authorities in *Wyatt Mfg. Co.*, 82 Lab.Arb. 153, 162 (BNA) (1983) (Goodman, Arb.). *Compare Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 306 (5th Cir.1988) (purchase contract required assumption of labor-related agreements). The arbitration decisions cited by Central States are distinguishable. *Herbert J. Caplan, Inc.*, 81 Lab.Arb.Rep. 22, 23 (BNA 1983); *Highpoint Sprinkler Co.*, 67 Lab.Arb.Rep. 239, 248 (BNA 1976). In both cases, the successorship language was followed by more explicit language specifically prohibiting sales to evade the terms of the CBA. In *Highpoint*, which was relied on by *Caplan*, the arbitrator

---

1. Central States also contends strenuously that the district court improperly treated the arbitrator's decision as foreclosing this issue against it by collateral estoppel or res judicata. We do not so interpret the district court's opinion. The trial court indicated that it agreed with the arbitrator's analysis and conclusion but did not imply that it was bound by his judgment.

based his award against the predecessor company primarily on this more specific language.

Although the arbitrator's judgment in the dispute between Local 657 and PYA/Monarch is not binding on this court, we would be remiss if it did not influence our judgment in some degree. The Supreme Court has acknowledged the special competence of arbitrators to interpret CBA's. *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). The arbitrator's decision carefully analyzed § 1.3 of the CBA and governing labor arbitration precedents, reaching the same conclusion that we do here. Contrary to the pension fund's assertions, there is no reason to believe that Local 657 was any less zealous or had any less incentive to advocate a construction of § 1.3 before the arbitrator entirely consistent with that sought here by Central States.

Without some mechanism to enforce the successorship provision, it is toothless, according to the weight of arbitration authority. Therefore, we agree with the district court that the CBA did not oblige PYA/Monarch to secure Sysco's adoption of the CBA prior to the sale of assets.[2]

■ Central States also contends that PYA/Monarch's lapse in notifying the fund of its intent to cease contributions and the fund's failure to acknowledge the belated notice obligates PYA/Monarch to continue contributing to the fund. The relevant provision states that "This Agreement shall continue in full force and effect until" notice is given and acknowledged. Central States assumes that the "effect" is PYA/Monarch's continued payment of contributions. This argument misconstrues the PA. The PA only requires that contri-

butions be made on behalf of bargaining unit employees pursuant to the terms of the CBA. After PYA/Monarch sold its Austin facility, however, the covered union members were no longer employees of PYA/Monarch pursuant to the CBA.

Second, under its contract interpretation, Central States could require a company to contribute to the fund long after it ceased to employ covered workers by simply withholding the fund's acknowledgement of the notice. This result runs contrary to the PA's definition of "employer," as "any Employer who is bound by a collective bargaining agreement with the Union...." Only "employers" must continue contributions until the notice is acknowledged. After PYA/Monarch sold its assets and was no longer bound by the CBA, it was not an employer obligated to continue contributions.

Central States has not in any event proven any damages flowing from the lack of notice. Because we have concluded that there was no underlying obligation on the part of PYA/Monarch to continue contributions pending compliance with the PA's notice provision, damages for the tardy notice would only be proper if the fund suffered some tangible expense such as being forced to take an investment loss for being short the funds it was expecting to receive from PYA/Monarch. No such damage was averred.

### B. *Sysco.*

■ The parties have assumed for this action that Sysco is a successor employer to PYA/Monarch. Central States selectively reads the sales agreement between PYA/Monarch and Sysco to contend that Sysco assumed PYA/Monarch's contractual rights and obligations regarding the CBA and PA.[3] The fund acknowledges

---

**2.** Central States contends that as a third-party beneficiary of the CBA it is somehow entitled to greater rights in enforcing § 1.3 than is Local 657. We agree that the union and PYA/Monarch could not have altered the CBA to the detriment of the pension fund. No alteration occurred here, however, but rather (1) an interpretation by an arbitrator of the scope of

§ 1.3 and (2) the district court's and our court's independent interpretation of § 1.3.

**3.** In its reply brief the fund concedes that, following the Supreme Court's decision in *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.*, —— U.S. ——, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), the district court's jurisdiction under ERISA is limited to considering "promised" pen-

that Sysco's liability depends on such an assumption. While the sales agreement includes general language to that effect, Central States ignores the specific provision that Sysco "shall have no liability relating to any multi-employer pension fund...." In addition, before completing the asset purchase, Sysco advised Local 657 that it would neither assume the CBA nor accept the obligation to contribute to the Central States Pension Fund. Thus, the argument that Sysco agreed to assume the obligation to contribute to the fund is meritless.[4]

For these reasons, the judgment of the district court is AFFIRMED.

sion fund contributions by Sysco through the end of the CBA as of March, 1986.

**4.** Central States also contends that Sysco is obligated to make the pension fund contributions on a theory of *quantum meruit.* This argument is unintelligible and unsupported by the evidence.