United States Court of Appeals,

Fifth Circuit.

No. 91-6231.

Mauricio GUTIERREZ, Francisco Aguirre, Simon Blanco, Teresa Calzada, Domingo Cortez, Delfino De La Garza, Concepcion Garza, Alfredo Gonzales, Maria Concepcion Guillen, Elena Herrera, Eliseo Lerma, Vincente Lopez, Maria Martinez, Pedro Ortiz, Anastacio Ramirez, Carolina Salinas, Virginia Aguirre, Paula Chavez, Jose Garcia Sosa, Maria Guadalupe Garza, Candelaria Hinojosa, Maria Zapata, and Ofelia Gaona, Plaintiffs-Appellants,

v.

UNITED FOODS, INC., Defendant-Appellee.

Jan. 14, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before GARWOOD and DeMOSS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiffs-appellants union members sued their former employer, defendant-appellee United Foods, Inc., for allegedly breaching the successors and assigns clause of its collective bargaining agreement with their union, under which they assert that United Foods was obligated to, but did not, require the purchaser of the business from United Foods to assume the labor agreement as a condition of the sale. The court below awarded summary judgment to United Foods on the ground that the employees lacked standing to bring suit under the Labor-Management Relations Act. We agree with that decision and now affirm.

**Facts and Proceedings Below**

Plaintiffs in this case are twenty-five Mexican-American laborers who worked for United Foods, Inc., a processor of frozen foods, at its Brownsville Refrigerated Services Division in Brownsville, Texas (the Brownsville facility). Plaintiffs were represented by Local 408 (previously Local 171) of the United Food & Commercial Workers International Union (the Union) and were members of a bargaining unit covering all production and maintenance employees, truck drivers,

[*]Chief Judge Emeritus John R. Brown sat for oral argument in this case, but died before issuance of the final decision herein. Accordingly, this decision is rendered by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

inspectors, and lead men at the Brownsville facility. United Foods and the Union had negotiated a collective bargaining agreement covering the Brownsville facility, which included a successors and assigns clause that is the focus of this case:

> "If the Owner or Company hereunder sells, leases or transfers his business or substantially all thereof, the successors, lessees or transferees shall be bound fully by the terms of this Agreement, and shall be obligated to pay the wages and salaries in effect at the time of the sale, lease or transfer, and shall assume all obligations of this Agreement in the place and stead of the Owner or Company signatory hereto."[1]

On November 26, 1985, United Foods announced its plans to sell the Brownsville facility to Refrigeration Engineering Company, the parent corporation of Tex-Mex Cold Storage, Inc. (Tex-Mex), and informed all of its Brownsville employees that their employment with United Foods would be terminated the following month. Upon learning about United Foods' plans, plaintiffs sought to have the Union intervene to protect their rights under the collective bargaining agreement. However, the Union took no action to enforce the agreement.

As promised, the Brownsville facility was transferred to Tex-Mex on December 18, 1985, and plaintiffs were discharged from employment. Plaintiffs applied for jobs with Tex-Mex, but were not hired. However, Tex-Mex did hire other former United Foods employees who were less senior than plaintiffs, in violation of plaintiffs' seniority rights under the collective bargaining agreement.

Plaintiffs renewed their efforts to involve the Union and requested that it seek arbitration with United Foods over the asserted breach of the successors and assigns clause. However, the Union again took no action. Therefore, plaintiffs brought suit against United Foods[2] under section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185,[3] alleging that, by failing to require

---

[1]The collective bargaining agreement, which had been adopted on March 1, 1982, was due to expire on March 1, 1986.

[2]The plaintiffs also filed suit against the Union alleging a breach of the Union's duty of fair representation. That suit was subsequently settled. No suit was filed against Tex-Mex, for a successor corporation has no obligation to assume a collective bargaining agreement. *See NLRB v. Burns Int'l Sec. Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

[3]Section 301(a) of the LMRA provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district

Tex-Mex to assume the collective bargaining agreement, United Foods had breached the successors and assigns clause.[4] United Foods moved for summary judgment and the district court in a memorandum opinion granted the motion on the basis of the plaintiffs' lack of standing to bring suit under section 301.[5]

## Discussion

### I.

It has long been settled that section 301 permits a union to sue an employer with whom it has negotiated a collective bargaining agreement for violations of that agreement. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court held that section 301 also encompasses suits brought by union members seeking "to vindicate individual employee

---

court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

[4]We express no opinion as to whether this clause in fact created any obligation on the part of United Foods. In *Central States, Southeast & Southwest Areas Pension Fund v. PYA/Monarch of Texas, Inc.,* 851 F.2d 780 (5th Cir.1988), this Court was faced with a successorship clause similar to the one in this case. The clause at issue in *Central States* provided:

"This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event of a sale of the operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of the agreement for the life thereof...." *Id.* at 781-82.

Acknowledging that the clause contained "general successorship language," this Court nonetheless held that it did not require the employer to compel assumption of the collective bargaining agreement by the purchaser. *Id.* at 782. Lacking more "explicit" or "specific" language, the Court deemed the successorship clause to be "toothless." *Id.* at 782, 783. *But see Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Owens-Illinois, Inc.,* 758 F.Supp. 962, 971 (D.N.J.), *aff'd without op.,* 941 F.2d 1201 (3d Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 877, 116 L.Ed.2d 781 (1992) (upholding an arbitrator's decision that a successorship clause obligated an employer to require a purchaser to assume a labor agreement and noting the tension between this conclusion and *Central States* ).

[5]United Foods also argued before the district court that the plaintiffs had failed to exhaust the collective bargaining agreement's grievance procedures or the Union's internal remedies. Granting summary judgment on the standing issue, the district court did not reach these arguments. Nor do we.

rights arising from a collective bargaining contract."  *Id.* at 200, 83 S.Ct. at 270.[6]  Yet *Smith* is properly read as establishing the *jurisdiction* of federal courts over such suits.  *Smith* did not address the separate question of the scope of employee *standing* to sue, as the majority acknowledged, *see id.* at 201 n. 9, 83 S.Ct. at 270 n. 9, and a dissent emphasized:  "[T]he Court studiously refrain[ed] from saying when, for what kinds of breach, or under what circumstances an individual employee can bring a § 301 action and when he must step aside for the union to prosecute his claim."  *Id.* at 204, 83 S.Ct. at 272 (opinion of Black, J.).[7]

The Supreme Court's sole attempt to articulate the standing requirements for suits brought by individuals under section 301 occurred in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).  In *Hines,* the Court sustained an employee's right to sue his employer for wrongful discharge in violation of a collective bargaining agreement.  Individual workers have standing under section 301, the *Hines* Court said, when they assert " "uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge."  *Id.* at 5, 96 S.Ct. at 1055 (citing *Smith* ).[8]  Since *Hines,* however, the Supreme Court has provided no additional guidance as to the scope of the personal rights which give rise to standing under section 301.  Judicial development of the *Hines* doctrine in the Courts of Appeals has been similarly scanty and in this Circuit non-existent.[9]

---

[6]*Accord DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) ("It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement.") (citing *Smith* ).

[7]That section 301 imposes analytically distinct jurisdictional and standing requirements was reaffirmed recently in *Wooddell v. Int'l Bhd. of Elec. Workers,* --- U.S. ----, ---- & n. 4, 112 S.Ct. 494, 498 & n. 4, 116 L.Ed.2d 419 (1991).

[8]Before bringing such a suit against his employer, however, an employee must exhaust any grievance or arbitration procedures contained in the collective bargaining agreement, *see Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), unless the union has breached its duty of fair representation, *see Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).  Nevertheless, to sue his employer, an employee must still prove that the union breached its duty of fair representation.  A union breaches its duty of fair representation by acting in a "discriminatory, dishonest, arbitrary, or perfunctory manner." *DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290.

[9]The *Hines* decision had been anticipated by this Court's decision in *Woodward Iron Co. v. Ware,* 261 F.2d 138 (5th Cir.1958), in which Judge Wisdom held that two employees "have

*II.*

Thus, to evaluate the standing of plaintiffs in this case, we must decide whether United Foods' alleged breach of the successors and assigns clause violated a uniquely personal right of the plaintiffs. Initially, we consider plaintiffs' suggestion that we should "characterize as personal any right conferred by the collective bargaining agreement that is not reserved exclusively to the union as a matter of law." We decline this invitation. Plaintiffs present no authority on behalf of their novel theory and instead defend it on the ground that it strikes an appropriate balance between the competing labor law interests in, on the one hand, having unions act as the exclusive representatives of employee interests and, on the other hand, allowing workers to vindicate their individual rights. Although we might agree that these are the relevant concerns,[10] plaintiffs' theory does not strike a proper balance. The standing of individual employees to bring suit under section 301 is an exception to the general rule that only unions can litigate violations of labor agreements. Plaintiffs, however, have identified only two rights which, under their theory, would be reserved exclusively to unions: the right to bargain collectively with the employer, *see May Dep't Stores Co. v. NLRB,* 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945), and the right to picket an employer's premises, *see Emporium Capwell Co. v. Western Addition Community Org.,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975). Thus, under plaint iffs' theory, the exception would all but swallow the rule. This outcome would contradict the Supreme Court's instruction that individual standing be limited to uniquely personal rights.

---

standing in court to sue their employer for damages for unlawful discharge. This right is personal to them and exists irrespective of the union's suable status and interest in prosecuting employee claims under collective agreements." *Id.* at 141.

[10]As this Court said in *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir.1971) (per curiam):

> "While [*Smith* ] established that jurisdiction exists in this Court to entertain a suit by an individual employee regarding personal rights under Section 301(a), clarification of standing requirements was left to subsequent cases. The problem is that of "striking a meaningful balance, consistent with existing labor policy, between individual rights and the continued effectiveness of the collective bargaining process.' " *Id.* at 170 (quoting *Local Union No. 12 v. NLRB,* 368 F.2d 12, 18 (5th Cir.1966)).

Setting aside plaintiffs' overbroad theory, we have no trouble concluding that plaintiffs lack standing in this case. As we conceive of it, our task is to determine whether the right being asserted by plaintiffs is a uniquely personal right, and therefore amenable to individual enforcement, or a collective right of all union members, and therefore reserved to the union to enforce. This line between personal and collective rights is not entirely pellucid. Fortunately, we need not today draw that line with precision for this is not a marginal case.

The "right" which United Foods allegedly violated is that of failing to obtain an agreement by Tex-Mex to assume the collective bargaining agreement and to be bound by its terms.[11] This cannot be fairly described as a personal right, much less a uniquely personal one. The successors and assigns clause was a promise made by United Foods to ensure the perpetuation of the collective bargaining agreement should United Foods sell its operation. As such, it represented an obligation from United Foods to the Union as a collectivity. To be sure, assumption of the collective bargaining agreement by Tex-Mex would have benefited individual workers to varying degrees. However, the *right* at issue—United Foods' duty to honor the successors and assigns clause—is one that ran to *all* United Foods employees in equal measure.

The collective nature of the right is also evident in the following respect. Successful assertion of the successors and assigns clause would mean that United Foods was obligated to get Tex-Mex to honor not just plaintiffs' seniority rights but the whole package of benefits and privileges contained in the collective bargaining agreement. Chief among these is the recognition of the Union as the workers' representative. Article I, section one of the Agreement stated that "[t]he Company recognizes the Union as the certified collective bargaining agent for all production and maintenance employees, truck drivers, inspectors and leadmen employed by the Company in Cameron County, Texas...." Therefore, by saying that United Foods was obligated to require Tex-Mex to assume the collective bargaining agreement, plaintiffs necessarily are saying that United Foods was obligated to

---

[11]At oral argument, plaintiffs' counsel mischaracterized the right at issue by arguing that plaintiffs are merely asserting their seniority rights under the collective bargaining agreement. The legal right which United Foods allegedly breached is that of failing to enforce the successors and assigns clause. That United Foods' inaction caused plaintiffs to be passed over in favor of less senior workers is a consequence of the right violation, but not the right violation itself.

require Tex-Mex to recognize the Union. Individual union members, however, have no authority to assert a union's right to recognition. A union must do that for itself.

*III.*

Our conclusion today is supported by *Brown v. Sterling Aluminum Products Corp.,* 365 F.2d 651 (8th Cir.1966), *cert. denied,* 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967), in which individual employees sued their employer for refusing to bargain over the company's plan to shut down its plant and relocate it after the collective bargaining agreement had expired. The Eighth Circuit, however, held that the employees lacked standing because the company's "failure to discuss these matters according to the contract is a violation of the collective rights of the entire unit and not of the personal rights of the individual members." *Id.* at 657. We agree with the principle articulated by the *Brown* Court:

> "[W]henever the right sought to be enforced is not uniquely personal to the individual but is a right possessed by the bargaining unit as a whole, only the Union as the sole representative of that unit would normally have the standing to enforce the right. Thus the individual would have no standing to compel discussion of broad collective bargaining principles such as the re-negotiation of a new contract or the relocation of a plant, even if such discussion were required by the existing collective bargaining agreement." *Id.*[12]

It is plain that the successors and assigns clause was, in the words of the *Brown* court, a "collective right[ ] of the entire unit" or a right "possessed by the bargaining unit as a whole."

Plaintiffs attempt to evade the impact of *Brown* by pointing to that court's broad statement that individuals can "enforce any contractual rights acquired under the agreement and sue for any breach by the Company that occurred during the term of the agreement." *Id.* Plaintiffs conveniently omit, however, the important qualifying language contained in the next sentence: "We believe, however, that for an individual to bring an action under § 301 he must be seeking to enforce a right that is *personal* to him and vested at the time of the suit." *Id.* (emphasis added) (citation omitted). *Brown* simply cannot be read to sanction an employee's standing to sue to enforce a company's

---

[12]This same principle was applied in *Jensen v. Farrell Lines, Inc.,* 658 F.2d 27 (2d Cir.1981) (per curiam), in which employees brought suit to enforce a provision of a purchasing agreement which obligated their new employer to recognize the union which had represented them previously. Citing *Brown,* the Second Circuit denied the employees standing on the ground that "only [the union] could litigate over the existence of the bargaining relationship." *Id.* at 29.

alleged breach of a successors and assigns clause.

Also buttressing our decision is *Anderson v. Ideal Basic Industries,* 120 L.R.R.M. 2039, 1985 WL 56750 (E.D.Tenn.1985), *aff'd,* 804 F.2d 950 (6th Cir.1986), a factually analogous case. As here, in *Anderson* individual union members brought suit under section 301 to enforce a successorship clause after their employer had sold its operations to another firm and failed to require the purchaser to accede to the terms of a collective bargaining agreement. One issue in *Anderson* was whether the employees had the requisite standing to enforce the successorship clause. It was held that they did not.

> "The Court further is of the opinion that any obligations created by the successorship clause are obligations to the bargaining unit as a whole and are not obligations to the individual members.... Individual union members have no authority to bargain with the Company over the terms of the Agreement. Rather, the Union has the power and responsibility to enforce the successorship clause in bargaining with the Company." *Id.* at 2044 (citations omitted).

Plaintiffs attempt to distinguish *Anderson* on the ground that the successorship clause in that case obligated the company to *bargain* with the union, which plaintiffs concede is a collective right. This is a mistaken reading of *Anderson.* The successorship clause in *Anderson* did not impose a duty to bargain; it was, in fact, quite similar to the clause at issue in this case.[13] To be sure, *Anderson* did hold that the employees lacked standing to sue their employer for failing to bargain with the union. However, the duty to bargain had nothing to do with the successorship clause. As the *Anderson* court recognized, employers have a duty to bargain with a union over the effects of a plant shut down. *See First Nat'l Maintenance Corp. v. NLRB,* 452 U.S. 666, 677 n. 15, 101 S.Ct. 2573, 2580 n. 15, 69 L.Ed.2d 318 (1981) (cited in *Anderson,* 120 L.R.R.M. at 2043). This duty is derived not from any collective bargaining agreement, however, but from §§ 8(d) and 8(a)(5) of the National

---

[13]The successorship clause in *Anderson* provided:

> "This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event of the sale or lease by the Company of any plant or terminal covered by this Agreement, or in the event the Company is taken over by sale, lessee assignments, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. The Company shall give notice of the existence of this Agreement to any purchaser, lessee, assignee, etc., of this Agreement. Such notice shall be in writing with a copy to the Union not later than the effective date of sale." 120 L.R.R.M. at 2042 n. 2.

Labor Relations Act, 29 U.S.C. §§ 158(d) and 158(a)(5). Thus, *Anderson* 's holding pertaining to standing to enforce the successorship clause was entirely distinct from its holding pertaining to standing to require bargaining.

*IV.*

Plaintiffs direct our attention to several circuit court cases which uphold the standing of individual employees to sue under section 301. None of these cases, however, articulates a principle which would support the conclusion that plaintiffs have standing in this case.

In *Schultz v. Owens-Illinois, Inc.,* 560 F.2d 849 (7th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978), the Seventh Circuit held that machine manufacturing shop employees had standing to sue their employer for failure to institute an apprenticeship program. In so doing, the *Schultz* court purported to apply a two-part "test" for determining whether an asserted right is uniquely personal. According to the *Schultz* court, a right is uniquely personal if, first, the "employment benefit is mandatory under the collective bargaining agreement," *id.* at 854, and second, if there is a "factual predicate which is unique and personal to a particular employee." *Id.* In our opinion, this "test" does nothing to further or clarify the analysis of the issue before us. The first prong merely asks whether the employee was entitled to some benefit under a collective bargaining agreement. But this does not tell us whether the entitlement is personal or collective. The second prong asks whether that right or interest is unique and personal. That, however, merely restates the question which we are called upon to decide. Thus, from the *Schultz* "test" we can derive no principle which would support standing for plaintiffs. On the other hand, *Schultz* does endorse the principle upon which we base our decision today. Namely, that a uniquely personal right is not "a right possessed by the bargaining unit as a whole." *Id.* at 855; *see also id.* at 854 ("These plaintiffs are not seeking to represent the entire work force of 366 employees.").

In *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 511 (9th Cir.1978), the Ninth Circuit held that two technicians had standing to sue to recover overtime pay as provided under a collective bargaining agreement. The *Lerwill* Court, however, articulated no theory of what rights are "uniquely personal" and merely took its cue from dicta in *Hines* that among such rights are

agreements relating to "wages, hours, *overtime pay,* and wrongful discharge." *Hines,* 424 U.S. at 562, 96 S.Ct. at 1055 (emphasis added) (quoted in *Lerwill* with identical emphasis, 582 F.2d at 511).

Similarly, in *Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371 (11th Cir.1983) (per curiam), the Eleventh Circuit held that employees could sue to recover the back pay to which they were entitled under a collective bargaining agreement. As in *Lerwill, Diaz* reasoned that the case "involves wages, a matter *Hines* and *Smith* expressly held to be a proper subject of an employee's section 301 suit." 709 F.2d at 1374.[14]

Finally, plaintiffs cite *Santos v. Dist. Council of New York City and Vicinity of United Bhd. of Carpenters & Joiners,* 547 F.2d 197, 199-200 (2d Cir.1977), in which the Second Circuit held that union members had standing to seek enforcement of an umpire's resolution of an interunion dispute. Whatever analogical significance this holding may have, we believe that the *Santos* court confused standing under Article III with standing under section 301. *Santos* quoted from *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), an Article III standing case concerning a constitutional challenge to a zoning ordinance. In any event, a more recent decision by the Second Circuit cited with approval *Brown v. Sterling Aluminum Products Corp.,* a case which squarely supports our holding. *See Jensen v. Farrell Lines, Inc.,* 658 F.2d 27, 29 (2d Cir.1981) (discussed *supra* in note 12).

## Conclusion

For the reasons stated, we conclude that plaintiffs lack standing to bring suit under section 301 because United Foods' alleged breach of the successors and assigns clause did not violate a uniquely personal right of the plaintiffs. The judgment of the district court is accordingly

AFFIRMED.

---

[14]*Diaz* characterized this as an issue of subject matter jurisdiction rather than personal standing. This confusion is understandable since, as noted above, the Supreme Court's *Smith* opinion was cast in jurisdictional terms and only later did *Hines* address standing under section 301. Standing was also involved in *Diaz,* but the issue was standing under Article III rather than standing under section 301.