LIBERTY COUNTY OFFICERS
ASSOCIATION, Gerald Bagwell
and Tom Davenport, Plaintiffs,

v.

Sheriff O.J. STEWART, Individually and in his Capacity as Sheriff of Liberty, County, Texas; Lee Groce, Individually and in his Capacity as Liberty County Commissioner; and Melvin Hunt, Individually and in his Capacity as Liberty County Commissioner, Defendants.

No. 1:94–CV–0404.

United States District Court,
E.D. Texas,
Beaumont Division.

July 20, 1995.

Julie Kareé Cain, Liberty, TX, Ted B. Lyon, Jr., Ted B. Lyon, Jr. & Associates, Mesquite, TX, for Liberty County Association of Deputy Sheriffs and Correctional Officers, Gerald Bagwell and Tom Davenport.

Karen Renee McNair, Taylor & Norwood, Liberty, TX, for O.J. Stewart.

Christian J. Gros, San Antonio, TX, for Combined Law Enforcement Association of Texas.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiffs Liberty County Officers Association (LCOA) a/k/a Liberty County Deputy Sheriffs and Correctional Officers Association (LCDSCOA), Gerald Bagwell (Bagwell), and Tom Davenport (Davenport) filed this action contending that defendants Sheriff O.J. Stewart (Stewart), Lee Groce (Groce), and Melvin Hunt (Hunt) violated the Labor Management Relations Act (LMRA) and the Texas Labor Code by attempting to frustrate the formation of a union of law enforcement deputies in Liberty County. Plaintiffs also brought claims against defendants for breaching employment contracts and for violating 42 U.S.C. sections 1983 and 1985(3). Defendants Stewart, Groce, and Hunt filed a Motion to Dismiss, and in the Alternative, Motion for Summary Judgment contending that the LCOA, Bagwell, and Davenport lack standing to assert a claim for "union busting" and fail to allege sufficient facts to overcome various governmental and qualified immunity defenses raised by these defendants. Finding some genuine issues of material fact in dispute, this court GRANTS, in part, and DENIES, in part, defendants' motion.

## I. BACKGROUND

Bagwell and Davenport were employed as law enforcement officers for the Liberty County Sheriff's Department (Sheriff's Department), Liberty County, Texas. Deputy Sheriff Bagwell began working for the Sheriff's Department in February, 1988. During his four and one-half years of service, Bagwell acted as the department's juvenile crimes officer. Captain Davenport worked for the Sheriff's Department for ten years and had been assigned to the department's narcotics division.

These officers actively participated in the LCDSCOA from its inception in February, 1992, to the present. Bagwell was the president and Davenport was a member of the board of directors of the LCOA a/k/a LCDSCOA. Problems began in July, 1993, when Bagwell and Davenport aided the LCOA in filing a petition with the county clerk for a special election to adopt the Texas Fire and Police Employee Relations Act (Act), codified at Tex.Rev.Civ.Stat. Art. 5154c-1 (Vernon 1987). The Liberty County Commissioners' Court refused to set an election date. Consequently, plaintiffs filed a writ of mandamus in state district court to obtain a date for this election.

The election was held on November 2, 1993. The Liberty County citizens voted to allow the Sheriff's Department deputy sheriffs and county jailers to organize and collectively bargain with the Sheriff and the Commissioners' Court pursuant to the Act. The campaign leading to this election received extensive coverage by the media. Bagwell and Davenport appeared on television and were heard on radio broadcasts extolling the benefits of voting to permit deputy sheriffs and jailers to collectively bargain for their employment benefits. After the election, Bagwell and Davenport allegedly heard rumors that Sheriff Stewart and certain members of the Commissioners' Court intended to terminate four of the elected officers of the LCOA, Bagwell, Davenport, Deputy Patrick Hardin, Sgt.-at-Arms, and Deputy LeeAnn Wheat, Secretary-Treasurer.

In February 1994, Bagwell and Deputy Hardin met with Stewart and advised him that the LCOA intended to vote on whether to affiliate itself with the Combined Law Enforcement Associations of Texas (CLEAT).[1] Sheriff Stewart allegedly stated that he did not approve of CLEAT. Stewart also expressed his disdain for CLEAT's tactics and reminded plaintiffs that Liberty County was not a union county. He then advised Bagwell and Hardin that it would be a mistake for them to join CLEAT. Notwithstanding Stewart's objections, the LCOA aligned itself with CLEAT Local Union No. 6100 of the Communication Workers of America (CWA) (AFL-CIO). After the vote, Bagwell and Hardin again met with Stewart at which time Stewart reiterated his displeasure with CLEAT and stated that this affiliation was a mistake.

Bagwell and Davenport were elected to the LCOA's collective bargaining committee. This committee acted as the bargaining agent for all members of the LCOA and prepared proposals for inclusion in the Collective Bargaining Agreement (CBA). At this time, the CBA consisted of recommendations that could have altered the Sheriff's policies and/or the Commissioners' Court's wage and benefit scales.

Sheriff Stewart fired Captain Davenport on March 31, 1994. Davenport was allegedly fired as Captain of the drug task force for being "uncooperative" and a "danger to the officers and citizen-informants working with the task force." Davenport also was alleged to have made derogatory comments about Sheriff Stewart's qualifications and effectiveness as sheriff.

Five days later, Sheriff Stewart fired Officer Bagwell. Bagwell was allegedly fired for deficiencies in his job performance. Stewart contended that Bagwell was abusive to juveniles and uncooperative with other persons handling juvenile matters within the department. However, neither Davenport or Bagwell had prior disciplinary records or were

---

1. CLEAT is a statewide police labor organization that provides legal and labor relations assistance to various local associations.

involved in police misconduct of any kind prior to their termination.

Plaintiffs' maintain that Stewart and certain members of the Commissioners' Court formulated a scheme to disrupt the LCOA's activities and destroy the union's ability to organize the employees and engage in negotiations for a CBA. This scheme allegedly involved spreading rumors that four ringleaders would be terminated before they could send notice of intent to collectively bargain. Sheriff Stewart fired both Bagwell and Davenport shortly thereafter. Plaintiffs contend that County Commissioners Lee Groce and Melvin Hunt also participated in this conspiracy.

## ANALYSIS

Jurisdiction over this matter is conferred by the operation of 28 U.S.C. sections 1331, 1343(a) and claims brought under 42 U.S.C. sections 1983, 1985.

■ Before the court is defendant's motion for summary judgment. Summary judgment is appropriate when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *and see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). It is unnecessary for the movant to negate elements of the nonmovant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–886, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990).

■ If the movant shows that no genuine fact issues exist, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir.1994) (en banc) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–

54). The nonmovant's burden is not satisfied with

"some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," *Lujan*, 497 U.S. at 871–73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994).

*Little*, 37 F.3d at 1075. At this point, summary judgment is appropriate if the nonmoving party fails to come forward with sufficient facts and law demonstrating a basis for recovery. *Little*, 37 F.3d at 1071.

■ The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 457–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, this favorable presumption for the nonmovant exists only when the nonmovant presents an actual controversy of fact. The court will not assume controversy when insufficient facts exist to sustain the party's complaint. *Little*, 37 F.3d at 1075; *and see Lujan*, 497 U.S. at 888, 110 S.Ct. at 3188.

In the present case, plaintiffs allege that they were wrongfully terminated from their employment as deputies of the Sheriffs' Department in retaliation for their efforts in gaining and asserting collective bargaining rights for the employees of the Liberty County Sheriffs' Department. Defendants filed a motion for summary judgment contending that plaintiffs have no standing to bring a private cause of action for "union busting" under state or federal law. Defendants also contend that governmental and/or qualified immunity act as valid defenses to plaintiffs' claims.

1. *Standing to assert a private cause of action for "Union Busting" under the Texas Labor Code section 101.051 and the Labor Management Relations Act, section 301 et seq.*

■ Defendants contend that these general legislative acts do not give rise to private

causes of action and are not self enforcing statutes. As such, defendants maintain that plaintiffs have no standing to bring a cause of action under section 101.051 of the Texas Labor Code or section 301, *et seq.*, of the LMRA. Plaintiffs counter this argument by stating that the LCOA has standing as a recognized local union of the Communications Workers of America (CWA) to bring a suit in equity for its members under these provisions.

■ The issue of standing in LMRA cases was recently visited by this circuit in *Gutierrez v. United Foods, Inc.*, 11 F.3d 556 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 2164, 128 L.Ed.2d 887 (1994). In *Gutierrez*, the court recognized that, in general, only labor unions may litigate violations of labor agreements or union rights under the LMRA. *Id.* at 559–562. The exception to this general rule applies when individual employees seek to assert "uniquely personal" rights "such as wages, hours, overtime pay, and wrongful discharge." *Id.* at 559 (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976)). The individual right must be *personal* to him and vested at the time of the suit. *Gutierrez*, 11 F.3d at 561 (citing *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 657 (8th Cir.1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967)).

The Fifth Circuit recognized individual standing as an exception to the general rule that only unions can litigate violations of labor agreements.[2] *Gutierrez*, 11 F.3d at 559. However, a claim for "union busting" under section 301 is not uniquely personal and does not confer standing to Bagwell and Davenport to sue in their individual capacities. *See Hines*, 424 U.S. at 562, 96 S.Ct. at 1055. A union busting claim is not *personal* to these plaintiffs or vested at the time of the

suit. *See Gutierrez* at 561 (citing *Brown*, 365 F.2d at 657). The personal rights recognized by the Supreme Court in *Hines* and by this circuit in *Gutierrez* have not attached to Bagwell and Davenport because no collective bargaining agreement or other employment contract was in place. For these reasons, Bagwell and Davenport's "union busting" claims under section 301 of the LMRA fail. Therefore, defendants motion for summary judgment is granted as to Bagwell and Davenport's LMRA and Texas Labor Code claims.

■ Although Bagwell and Davenport do not have standing to assert claims for "union busting," the LCOA does have standing to enforce the rights held by union members. It has been long settled that section 301 permits a union to sue an employer on behalf of its union members. *Gutierrez*, 11 F.3d at 558 (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). As such, the LCOA may bring claims for "union busting" and for violations of the right to attempt to organize and collectively bargain against these defendant/employers. Therefore, defendants' motion for summary judgment against the LCOA's claims for union busting and interference with the right to organize as a labor union is denied.

### 2. Termination as an Administrative Functions giving rise to governmental or qualified immunity.

#### a. Governmental Immunity

■ Plaintiffs sued Stewart, Groce and Hunt in their official capacities. Suits against governmental officials in their official capacities are, in effect, suits against the governmental entity that those officials represent. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991);

---

**2.** In *Gutierrez*, the this circuit adopted the Eighth Circuit's reasoning and quoted:

[W]henever the right sought to be enforced is not uniquely personal to the individual but is a right possessed by the bargaining unit as a whole, only the Union as the sole representative of that unit would normally have standing to enforce the right. Thus the individual would have no standing to compel discussion

of broad collective bargaining principles such as the re-negotiation of a new contract or the relocation of a plant, even if such discussion were required by the existing collective bargaining agreement.
*Gutierrez*, 11 F.3d at 560–61 (citing *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 657 (8th Cir.1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967)).

*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). In official capacity suits, the only available immunity defenses are forms of sovereign immunity that the governmental entity may possess. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105.

▮▮▮▮ Plaintiffs may prevail, notwithstanding the governmental immunity defense, in two instances. A municipality may be liable when "a municipality's final policymakers are held effectively to have made policy or condoned the creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees." *Turner v. Upton County, Texas,* 915 F.2d 133, 136 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). In the second instance, "the municipality may be held liable for the illegal or unconstitutional actions of its final policy makers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Id.*

▮▮▮▮ To prevail in a suit against defendants in their official capacities, plaintiffs must plead and prove that these officials: (1) acted in accordance with policy or custom; (2) of a local governmental entity's final policy maker(s); (3) that caused plaintiffs to be subjected to a deprivation of a Constitutional or statutorily guaranteed right. *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987); *and see, generally, Graham,* 473 U.S. at 166–167, 105 S.Ct. at 3105–06.

▮▮▮▮ The first step in this analysis is to determine whether these defendants, as governmental officials, had final policy making authority for Liberty County. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989). This legal question rests on State law grounds. *Id.*

▮▮▮▮ In the case *sub judice,* Sheriff Stewart statutorily possessed discretionary authority to evaluate and make final decisions concerning the tenure of Liberty County deputy sheriffs. Tex.Loc.Gov't Code Ann. § 85.003(c) (Vernon 1988). Furthermore,

Lee Groce and Melvin Hunt, as county commissioners, also have policy making authority over the sheriff's department with respect to tenure, wages and other employment related policies. *See* Tex.Loc.Gov't Code Ann. § 158.035. By statute, these defendants, as the sheriff, and two county commissioners, possess final policy making authority for the Liberty County Sheriff's Department.

Nevertheless, defendants contend that they are entitled to governmental immunity based on their contention that plaintiffs have not plead specific facts that show defendants acted in accordance with an officially adopted policy or custom. Defendants simply cite *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) and *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for support. This court finds the citation unpersuasive.

As the final policy making authority concerning the Liberty County Sheriff's Department, these defendants had final authority, by statute, to enact a policy for the County. The question then becomes whether plaintiffs have presented sufficient facts demonstrating that defendants acted in accordance with policy or custom that deprived plaintiffs of a Constitutional right. This court finds that plaintiffs presented sufficient evidence to raise such an issue.

Bagwell and Davenport had a statutory right to associate with a labor union and a Constitutional right to speak out on matters of public concern. *See* Tex.Labor Code § 101.051; U.S. CONST., Amend. 1. Bagwell and Davenport were allegedly terminated for poor job performance. However, they had no prior disciplinary problems at the Sheriff's Department. In fact, Sheriff Stewart admitted that he had no independent knowledge of poor job performance by the plaintiffs, but terminated them for failing to cooperate with investigations in other departments and for overall poor job performance.

The plaintiffs' pro-union activities, coupled with the peculiar timing of their termi-

nations, and Stewart, Hunt and Groce's anti-union sentiment, raises genuine fact issues as to the true reasons plaintiffs were fired. Plaintiffs provided numerous affidavits expressing the quality of their job performances. Stewart's own deposition testimony revealed his anti-union sentiment. Furthermore, affidavits showed that Groce and Hunt did not approve of the union and wanted to terminate "troublemakers" within the department. A reasonable jury could conclude that the Commissioners would prefer not to be forced to collectively bargain with a union in setting wage and tenure scales for the department. For these reasons this court finds that plaintiffs presented sufficient evidence to avoid summary judgment on this issue.

### b. Qualified Immunity

 Defendants also contend that they are entitled to qualified immunity. In support of this contention, defendants rely on *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Harlow* and its progeny use qualified immunity to protect state officials for alleged constitutional torts if their conduct does not violate clearly established law effective at the time of the alleged tort. *See Vojvodich v. Lopez,* 48 F.3d 879, 884 (5th Cir.1995). Courts must first determine whether the plaintiff has alleged a violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). If the plaintiff clears this hurdle, the court must determine whether defendant's official conduct was objectively reasonable. *Id.*

Defendants maintain that plaintiffs asserted no specific facts to show that their constitutional rights were clearly established at the time of their alleged injuries. Defendants also assert that plaintiffs failed to plead specific facts to contradict a qualified immunity defense.

Plaintiffs contend that qualified immunity does not apply because they have plead, with specificity, constitutional violations of free speech, freedom of association and the statutory right to participate in the organization of employees to collective bargain. Plaintiffs maintain that their factual allegations demonstrate defendants violated clearly established law.

 Plaintiffs had a clearly established and well known right to participate in, and promote the organization of employees into a labor union. Tex.Labor Code § 101.051. Plaintiffs also had a First Amendment right to associate with labor organizations and to speak with other employees to promote organized labor.[3] Although defendants had a lawful right to terminate plaintiffs based on job performance deficiencies, plaintiffs brought forward sufficient summary judgment evidence to raise a factual issue as to the motivation behind their terminations.

Affidavits presented raise questions as to the motivation behind Bagwell and Davenport's termination. Statements therein allege that Stewart, Hunt and Groce sought to frustrate the formation of the LCOA union by firing persons they believed to be leaders of the union movement. Stewart stated that Bagwell and Davenport were fired for poor job performance, however, no investigation or prior complaints of poor performance were offered. Material questions of fact remain as to whether Sheriff Stewart fired Bagwell and Davenport for poor performance or whether the stated reasons were pretextual and truly based on their participation in the LCOA and CLEAT. Defendants failed to present evidence to show, as a matter of law, the termination of plaintiffs was objectively reasonable. Based on the summary judgment evidence presented, a reasonable jury could find that poor performance was merely a pretext for a termination grounded on plaintiffs' pro-union activities and qualified immunity would, therefore, not protect

---

**3.** When addressing the First Amendment rights of public employees, the court must invoke a balancing test. When balancing the interests at stake in this case of employees as citizens commenting on matters of public concern, with the interests of the State, as an employer, in promoting efficiency of its public servants, this court finds that the defendants have not shown or even alleged that participation in union activities disrupted State law-enforcement activities. *See Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Vojvodich v. Lopez,* 48 F.3d 879, 884 (5th Cir.1995).

the defendants from their actions associated with these terminations.

### 3. Plaintiffs' Breach of Employment Contract Claims

■■■ Defendants further contend that Texas is an employment-at-will state and, therefore, plaintiffs must state with specificity the particular rule, regulation, law or understanding between the parties creating a property interest in their continuing employment. *Idoux v. Lamar Univ. System*, 828 F.Supp. 1252, 1259 (E.D.Tex.1993) (citing *Brown v. Texas A & M Univ.*, 804 F.2d 327, 334 (5th Cir.1986)); *and see Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). Under Texas law, parties may alter at-will employment contracts by oral or written agreement. *Goodyear Tire and Rubber Co. v. Portilla*, 836 S.W.2d 664, 667 (Tex.App.—Corpus Christi 1992), *aff'd*, 879 S.W.2d 47 (Tex.1994). In *Portilla*, the court found that these types of "satisfaction contracts" arise when an employer makes a promise not to fire an at-will employee except for unsatisfactory performance. *Id.*

■■■ In this case, however, the Texas Local Gov't Code Ann. section 85.003(c) expressly states that "[a] deputy serves at the pleasure of the sheriff." Texas law prohibits contracts that alter the status of an employee's *statutorily mandated* at-will employment status. *Murray v. Harris*, 112 S.W.2d 1091, 1093–1094 (Tex.Civ.App.—Amarillo 1938, writ dism'd) (emphasis added). As in the present case, *Murray* involved the interpretation of an earlier version of the statute which provided that sheriffs appointed deputies to serve at the pleasure of the sheriff. *Id.* Murray entered into a written contract stating that his employment would continue until the sheriff's current term concluded. Murray brought suit for back-pay when he was fired one-year before the sheriff's term ended. The court held that the employment contract was void because the sheriff could not enter a contract with a deputy that violated the statutory mandate requiring deputies to serve at the pleasure of the sheriff. *Id.; and see Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex.App.—Austin 1995, n.w.h.).

In the instant case, the Texas Local Gov't Code Ann. section 85.003(c) requires a deputy to serve at the pleasure of the sheriff. Therefore, any alleged oral contracts altering the status of a deputy's employment are not recognized under Texas law.

■■■ Even if the statute did not require that deputies serve at the pleasure of the sheriff, any modification of at-will employment status must be based on express agreement. *Cote*, 894 S.W.2d at 540 (citing *Mott v. Montgomery County*, 882 S.W.2d 635, 638 (Tex.App.—Beaumont 1994, writ denied)). The party claiming a change in his at-will employment status bears the burden of proving an express agreement or written representation to that effect. *Hussong v. Schwan's Sales Enterprises*, 896 S.W.2d 320, 324 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.). "The writing must, 'in a meaningful and special way,' limit the employer's right to terminate the employment at will." *Id.* at 324–325 (quoting *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 577 (Tex.App.—Houston [1st Dist.] 1992, no writ)).

In this case, plaintiffs' alleged oral modifications do not alter their at-will status. Bagwell and Davenport assert that Sheriff Stewart made oral representations to them about their employment that effectively created an employment contract. Plaintiffs include their own affidavits stating that Stewart promised them job security even after federal grants for their positions ended. Plaintiffs contend that these promises altered their at-will status. This court disagrees.

■■■ No valid oral employment contract existed with either Bagwell or Davenport. As stated above, Texas law requires the existence of a contract specifically and directly limiting the employer's right to terminate the employment contract at-will. Merely stating that the Davenport would continue to have a job after the termination of a government grant for his position in no way affects his status as an at-will employee. Further, the fact that Bagwell agreed to take a position as a Juvenile Officer based on an alleged promise that he would always have a job with the Sheriff's Department does not change his at-will employment. Neither of these oral

agreements, assuming they existed, changed the at-will status of Bagwell and Davenport.

For the foregoing reasons, this court finds that Texas law does not permit deputies to alter their statutorily mandated at-will employment status. Even assuming that the Texas Local Gov't Code Ann. section 85.003(c) does not exist, plaintiffs have not demonstrated a writing that 'in a meaningful and special way,' limits the sheriff's right to terminate the employment at-will. Therefore, defendants' motion for summary judgment on plaintiffs' breach of employment contract claims is granted.[4]

### 4. Plaintiffs' allegations of a conspiracy to terminate their employment violating 42 U.S.C. § 1985(3).

▮ Finally, defendants assert that plaintiffs failed to plead sufficient facts to sustain a cause of action under 42 U.S.C. section 1985(3) for civil conspiracy. Section 1985(3) was enacted to protect the civil rights of individuals from "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). To prove a private conspiracy in violation of section 1985(3), plaintiffs must show a conspiracy of class based discrimination " 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.' " *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 759, 122 L.Ed.2d 34, 46 (1993) (quoting *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 850, 103 S.Ct. 3352, 3367, 77 L.Ed.2d 1049 (1983)). In the case *sub judice*, plaintiffs have not alleged race-based discrimination. Instead plaintiffs rely on their union association to form the necessary protected class.

The Fifth Circuit has held that plaintiffs must show some race-based, or otherwise class-based, discriminatory animus on the part of the conspirators to avoid summary judgment on claims brought under 42 U.S.C.

section 1985(3). *Hagan v. Houston Independent School Dist.*, 51 F.3d 48, 53 (5th Cir. 1995). In *Hagan*, the court found that a group consisting of male students, male athletes or all students is not a cognizable class under section 1985. *Id.* The court held that section 1985 requires plaintiffs to present evidence that their group was targeted specifically because of some *protected* common attribute. *Id.*

▮ In the present case, Bagwell and Davenport presented sufficient evidence that defendants were motivated by anti-union based animus within the meaning of section 1985. Plaintiffs alleged that their union activities directly lead to their termination and, as such, they are not merely a "group of victims of the tortious action." *Bray*, 506 U.S. at 269, 113 S.Ct. at 759, 122 L.Ed.2d at 46 (quoting *Carpenters*, 463 U.S. at 850, 103 S.Ct. at 3367).

In *Bray*, the Supreme Court held that the discrimination must intentionally deprive a class of persons of a right guaranteed against private impairment. *Id.* at 270–71, 113 S.Ct. at 760. The Fifth Circuit recognized *Bray's* expansion of section 1985(3) to include more than strictly race-based requirements of earlier law in the circuit. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994); *see Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 757 (5th Cir.1987) (holding that the Fifth Circuit only recognizes conspiracies based on racial animus to sustain claims under section 1985(3)). The right to organize and freely disseminate materials relating to the formation of unions is a statutorily protected right and enjoys some First Amendment protection. This court finds that the plaintiffs presented sufficient evidence to raise an issue of fact as to whether the defendants intended to impair plaintiffs' right to freely speak and constructively organize a labor union. Stewart admitted that he did not approve of the depu-

---

4. Defendants also strenuously argue that plaintiffs have no property or liberty interest in their employment. However, plaintiffs did not plead due process violations with respect this termination. Further, plaintiffs did not allege in their complaint that defendants deprived them of sub-

stantive due process rights. Plaintiffs only brought claims for breach of employment contract, violations of 42 U.S.C. section 1983, and civil conspiracy. Therefore, it is not necessary to address the possible property or liberty interest violations in this case.

ties organizing a labor union. Affidavits of Powell, Longnion and Collins raise a fact question as to the Commissioners' desire to fire the "troublemakers" and "ringleaders" of the pro-union movement. The affiants state that Groce and Hunt told them that union organizers should be terminated. This evidence, coupled with the timely termination of Bagwell and Davenport, who had no prior disciplinary records, presents a controversy inappropriate for summary judgment. A reasonable jury may find that Sheriff Stewart, and Commissioners Hunt and Groce conspired together for the very purpose of prohibiting the organization of a labor union. For these reasons, this court denies defendants motion for summary judgment on 42 U.S.C. section 1985(3) grounds.

### CONCLUSION

This court finds that defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiffs have presented sufficient evidence to raise questions of fact concerning defendants' alleged violations of 42 U.S.C. section 1983 and 1985(3). Plaintiffs have also demonstrated that the LCOA had standing to bring a claim for "union busting" under 29 U.S.C. section 185 and the Tex.Labor Code section 101.001 *et seq.*

However, the court finds that defendants' Motion for Summary Judgment with respect to plaintiffs' breach of employment contract claim is granted. A sheriff may not alter the at-will status of a deputy under Texas law. Further, Bagwell and Davenport do not have standing, as individuals, to bring claims for "union busting" under the LMRA or the Texas Labor Code.