United States Court of Appeals,

Fifth Circuit.

No. 94-41318.

Summary Calendar.

JOHN DOE, as next friend of Sarah Doe, and Jane Doe, as next friend of Sarah Doe, Plaintiffs-Appellees,

v.

RAINS COUNTY INDEPENDENT SCHOOL DISTRICT, et al., Defendants,

Rains County Independent School District, et al., Defendants-Appellants.

March 1, 1996.

Appeals from the United States District Court for the Eastern District of Texas.

Before JOLLY, JONES, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge.

This appeal was filed by school district personnel sued because Coach Siepert carried on a sexual affair with a female high school student. This court has already dealt with the district court's denial of qualified immunity to a teacher involved in the tragic events. *Doe v. Rains County Independent School District,* 66 F.3d 1402 (5th Cir.1995). This related interlocutory appeal focuses on the district court's order (a) denying qualified immunity to the school principal, Clopton, in his individual capacity under federal and state law; (b) denying qualified immunity to athletic director Talkington from plaintiffs' state law claims; and (c) denying immunity to Counselor Mabry and Superintendent Dr. Harrison and the other appellants under the Texas Education Code. This court has jurisdiction over this interlocutory appeal. Concluding that the district court erred in denying immunity to Clopton and Talkington, we Reverse. We do not reach the issue raised by Mabry and Harrison.

Because many of the facts pertinent to this appeal were described in the Fifth Circuit's earlier decision, we concentrate here on those facts pertinent to the appellants before us. The facts are recited from the summary judgment record, with all inferences drawn in favor of the Does.

Coach Siepert allegedly began a sexual affair with 15-year old Sarah Doe, whom he hired to

babysit occasionally for his two children commencing in the fall of 1991. Bob Clopton was principal of the high school at Rains Independent School District during Siepert's employment. After Siepert was hired, Clopton learned that Sarah Doe was babysitting for Siepert. He also saw Siepert walk Doe to the bus on one occasion. During February or March, 1992, it is alleged that Clopton asked Michael Deven Jones, another coach and former employee of RISD, whether Jones thought there was "anything going" between Sarah Doe and Siepert. Jones said he had no idea. Later that spring, Kara Emig, a high school senior, reported to Clopton that Siepert had asked her for a date while he was taping her for athletics. Emig also told him that Siepert said he could not do this while she was still a student. On or about September 14-16, 1992, Clopton learned that Siepert had taken another female student, Maggie Ehlers, out of class and "taped" her ankle for an athletic event. Clopton reported the incident to Superintendent Harrison and to Coach Talkington in a memo stating that Siepert should not remove students from academic classes because of athletics.

On November 5, 1992, Clopton saw Sarah Doe crying at school. Clopton called Sarah's parents to notify them that Sarah had "a problem" and to advise them to talk with her about it. A day later, he attended a conference with Harrison and Ginger Mabry in which Mabry told them that Sarah was having "trouble with a man." The three school officials decided that Mabry should obtain further information, but Sarah refused to provide more details about her "problem." All that was known by Mabry, Clopton and Harrison at this point was that Sarah Doe was feeling guilty about something related to babysitting, was having trouble with a "man" she would not identify, and seemed upset.

On November 11 Ms. White, a school teacher in RISD, revealed to Mabry what she had known for several months, that Sarah was so upset because she had become sexually involved with Coach Siepert. This was the first direct information linking Sarah to the coach. White and Mabry proceeded immediately to Dr. Harrison's office where they informed him, for the first time, of the affair. Harrison immediately instructed White to contact local law enforcement authorities and instructed Mabry to contact the Texas Depart ment of Human Services. This was done the next morning.

Also on November 12, Dr. Harrison informed Talkington and Clopton that criminal charges

had been filed against Siepert and that he was suspended with pay until further notice and pending further investigation of the allegations.

Coach Talkington had been responsible for recommending the hiring of Siepert in the summer of 1991 and for that purpose spoke to the athletic director at Lake Dallas Independent School District where Siepert formerly worked. The record does not reveal whether Talkington learned of Siepert's previous sexual relationship with a 15 year old student at Lake Dallas, but Talkington did not inquire whether, despite the positive recommendation of a coach at Lake Dallas, Siepert would be eligible for rehire there. Talkington was also aware of memos concerning the "taping" incident with Maggie Ehlers. He knew that Siepert was using Sarah Doe as a babysitter.

The Doe family asserted various claims against RISD and its teachers and employees. The court, ruling on summary judgment motions, denied the qualified immunity defense asserted by Clopton and Talkington and denied claims of immunity based on § 21.912 of the Texas Education Code by Harrison, Mabry, Clopton and Talkington.

Because the district court's rulings denying immunity to Clopton and Talkington were premised on legal errors, we must reverse.

A. Federal claim against Clopton.

Sarah Doe and her parents alleged that he owed a constitutional duty as the high school principal and supervisor of Coach Siepert not to act with deliberate indifference toward the evidences of possible sexual molestation. Appellees fortified this argument with reference to the Texas Family Code, which requires "professionals" who have "cause to believe that a child has been or may be abused or neglected" to report within 48 hours to the appropriate agencies. Tax Family Code Ann. § 34.02(d).[1] Appellees also refer to the policy manual of RISD, which contains a similar requirement. The district court first analyzed Clopton's section 1983 liability under the test set forth by this court en banc in *Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.) (en banc), *cert. denied* sub nom, *Lankford v. Doe,* --- U.S. ----, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). In *Doe,* this Court

---

[1]Effective April 20, 1995, §§ 34.01-34.03 of the Texas Family Code have been recodified in Title 5, §§ 261.101-261.106, of the Family Code. We refer to the statutes prevailing at the time of the events in question.

announced the following test for determining the personal liability of school officials in physical sexual abuse cases: the plaintiff must establish:

> 1) that defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

> 2) that the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

> 3) such failure caused a constitutional injury to the student. 15 F.3d at 454.

The district court concluded that the evidence against Clopton did not create a genuine issue of material fact on the first of these questions, requiring a grant of immunity under *Doe*.[2] Inexplicably, however, he then denied qualified immunity to Clopton, attempting to derive a new standard of constitutional liability from Judge Higginbotham's separate concurrence in *Doe*. Judge Higginbotham himself explained his position in greater detail in *Doe v. Rains County Independent School District, supra.* That case confirms that the provisions of the Texas Family Code requiring reports of child abuse are not "action under color of state law" for purposes of section 1983 violations. While Judge Higginbotham explains that "a school supervisory official can be held liable for breaching his duty under the Family Code to report a subordinate's abuse of a grade school student," such an official must be "*responsible* for preventing the constitutional injury; his failure to do so [must] render[ ] him *directly liable* for the deprivation that his subordinate perpetrated." 66 F.3d at 1413, 1417 n. 7 (emphasis added). In different terms, "[t]he federal cause of action arises not strictly from the official's breach of his duty to report, but ... is simply one manifestation of his failure to take steps to prevent or eliminate injury to a student." 66 F.3d at 1417, n. 7. At the very least, this holding does not affect the first criterion of the *Doe* test for supervisory official liability, and it therefore affords no separate ground for relief in this case. Thus, the district court's alternative

---

[2]The facts recited above, which are the *only* facts in the record that suggest Clopton had any inkling of Siepert's propensity to approach young women, do not even come close to those under which this court granted the principal qualified immunity in *Doe*. These facts are also much less egregious than those in another recent case decided by this court, *Hagan v. Houston Independent School District,* 51 F.3d 48 (5th Cir.1995), in which this court also upheld a qualified immunity defense of a school principal.

rationale against Clopton, which depended on state law duties under the Texas Family Code, was incorrect.[3]

B. State Law Claims against Clopton and Talkington.

The district court also denied immunity to Clopton and Talkington on appellees' state law claims premised on their failure to report Siepert promptly to governmental authorities under Texas Family Code section 34.02(d). As to appellant Talkington, the district court's November 16 order discusses Talkington's immunity claim in a way that seems quite inconsistent with his apparent later decision, in the December 20, 1994, order, that the plaintiffs *could* pursue a claim against Talkington under the Texas Family Code. The district court found:

> Defendant [Talkington] is entitled to summary judgment, in that his actions did not cause the constitutional violation, *nor is there a genuine issue as to whether he was aware of facts triggering his duty to report.* (emphasis added).

Nov. 16 Order, at 27. In other words, the court concluded that because the summary judgment evidence does not establish Talkington's duty to report Doe's abuse, he could not be liable for a constitutional law violation on this basis. This interpretation of the district court's November 16 opinion is reinforced by his discussion of the Texas Family Code immunity provision on page 30, which omitted any mention of Talkington. We conclude that there is no basis in the district court's analysis of the state law claim against Talkington to support the denial of summary judgment founded on immunity. The court's discussion supports a grant of immunity on the basis that Talkington had no knowledge before November 12, 1992, that would have required him to file a report under the Family Code. The district court's purported clarification to the contrary must have been a scrivener's error. Talkington's duty to report under the statute was discharged by Harrison.

The district court also concluded that Clopton "had a clear duty under Texas law to report the suspected abuse of the minor plaintiff". November 16 opinion at 21. This duty apparently arose

---

[3]As to Talkington, we agree with appellants that the district court appears to have decided that there was no viable section 1983 claim against him. The court's "clarifying order" entered in December, 1994, states that Talkington may continue to face liability only under appellees' state law claims. By inference, and based on the district court's findings that Talkington did not have any grounds for suspecting Siepert's relationship with Sarah before it was revealed to him on November 12, 1992, the grant of qualified immunity on the constitutional claims must be upheld.

from (1) Clopton's alleged conversation with Michael Deven Jones, (2) Clopton's having seen Siepert and his children with Sarah Doe at a basketball game, and (3) the incidents involving Kara Emig and Maggie Ehlers. Because the court concluded that a reasonable jury could find a violation of the reporting requirement, the court also denied Clopton's immunity claim under section 34.03 of the Texas Family Code, because Clopton's "failure to report Doe's abuse is more substantial than a failure to comply with the statute's technical requirement; his noncompliance frustrated the statute's purpose ..." Nov. 16 opinion at 30. The court also decided that the reporting requirement in the Family Code creates an implied cause of action on behalf of plaintiffs such as the Does. We need not address the breadth of any implied cause of action arising from the Family Code, because we conclude that Clopton did not legally have "cause to believe" that Sarah was being molested until November 12, 1992. One Texas court has explicitly linked the "cause to believe" standard with "probable cause" to believe an act of child abuse has occurred. *Dominguez v. Kelly,* 786 S.W.2d 749, 752-53 (Tex.App.1990, writ denied). Whether the standard is that tight, or whether it is as stringent as the constitutional liability standard for a supervisor, we need not say, because the facts in no way suggest that Clopton had "cause to believe" that Sarah was being abused by Siepert in Spring, 1992. That Clopton made one observation about Sarah and Siepert to Coach Michael Jones, and received an inconclusive reply, and that he saw Sarah at a basketball game with Siepert and his children simply do not suggest that sexual abuse is occurring.[4] There is no other evidence from which one can infer that Clopton had any more knowledge of the relationship between Sarah and Siepert during that time frame. Neither the incidents with Kara Emig nor Maggie Ehlers, the latter in September 1992, gave rise to any reasonable suspicion of sexual abuse, and certainly no such suspicion concerning Sarah Doe. Clopton did not begin to gain knowledge necessary to a reporting requirement until November 5, the date on which he called Sarah's parents to inform them of her "problem." But we cannot conclude that he violated his reporting duty under the statute on that date or for the next week, when

_____

[4]The most that can be said about this conversation is that it might have implied Clopton should investigate the relationship between Sarah and Siepert; but a duty to investigate plainly does not mean on these facts that there is "cause to believe" sexual abuse is occurring for purposes of the statutory reporting requirement.

he, Dr. Harrison and Ginger Mabry had all concluded that more investigation of the "problem" was necessary, and none of them knew of Siepert's involvement. Clopton's actions were appropriate under the statute. The duty to report was not triggered until November 11 or 12, and it was discharged by Harrison and White.

## CONCLUSION

Having resolved that the district court's denial of qualified immunity on the constitutional claim against Clopton was incorrect, as was his denial of judgment for Talkington and Clopton on the state law claims under the Family Code, we need not consider whether these appellants or Harrison and Mabry are additionally entitled to immunity under § 21.912 of the Texas Education Code. By finding it unnecessary to rule on this question, we do not endorse in any way the district court's discussion of the relation between immunity under § 21.912(b) and the reporting requirement of the Texas Family Code.

For the foregoing reasons, the order of the district court denying immunity to appellants Clopton and Talkington is REVERSED, and the case is REMANDED for judgment dismissing the federal constitutional and state law claims against them.